# United States District Court

FILED
ASHEVILLE, N.C.
JUL 3 0 2007
U.S. DISTRICT COURT
W. DIST. OF N.C.

WESTERN DISTRICT OF NORTH CAROLINA

**SEALED**

UNITED STATES OF AMERICA
v.

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:07mj 81

BARRON SLOAN HENDERSON
A/K/A BARRY HENDERSON

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>October 2001, to the present</u> in <u>Buncombe</u> County, in the Western District of North Carolina defendant(s) did,
(Track Statutory Language of Offense)

conspiracy to commit the offense of illegal gambling business, engaging in monetary transactions in property derived from specified unlawful activity.

in violation of Title <u>18</u> United States Code, Section(s) <u>371, 1955, and 1957</u>

I further state that I am a(n) <u>SA FBI</u> and that this complaint is based
                                  Official Title
on the following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof:   [x] Yes  [] No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

7/27/07                              at Asheville, North Carolina
Date                                 City and State

DENNIS L. HOWELL                     _____
Name & Title of Judicial Officer     Signature of Judicial Officer

AFFIDAVIT

I, Charles P. Daly, being duly sworn, depose and state as follows:

I am a Special Agent of the Federal Bureau of Investigation and have held this position since March 1990. I have been assigned to the Charlotte Division since June 1990. I am currently assigned to the Criminal Enterprise Squad and have been since September 1995. Among my investigative responsibilities are the investigations of violations of Title 18, United States Code, Sections 371 (Conspiracy to commit offense or defraud United States), 1955 (Prohibition of illegal gambling businesses), and 1956 (Laundering of monetary instruments).

I, Eric S. Veater, being duly sworn, depose and state as follows:

I am a Special Agent of the Internal Revenue Service, Criminal Investigation Division (IRS-CID) and have been employed in that capacity since August 1998. My responsibilities include the investigation of possible criminal violations of the Internal Revenue Code, covered under Title 26 of the United States Code and money laundering statutes, covered under Title 18 of the United States Code, Sections 1956 and 1957.

This affidavit is made in support of the issuance of a Complaint and Arrest Warrant for Barron Sloan Henderson for violations of Title 18, United States Code, Sections 371, 1955 and 1512. Based upon the knowledge of the affiants and information provided by other law enforcement officers, We are fully aware and allege the following facts to be true and correct:

The affiants have been assisting the United States Attorney's Office with a grand jury investigation of Henderson Amusement, Inc. , its owners James and Barry Henderson, its employees and business associates for alleged violations of Title 18, United States Code, Sections 371, 1955,1956,1957 and 1512 in the Western District of North Carolina and other districts in the United States. This affidavit of probable cause will describe the conspiracy to commit the violations and then describe the evidence related to the criminal acts of James Otis Henderson in violations of Title 18, United States Code, Sections 371, 1955, and 1957..

Henderson Amusement, Inc. is a corporation, which is owned by brothers James Otis "Jamie" and Barron Sloan "Barry" Henderson. Henderson Amusement, Inc. was engaged in the operation of video gaming devices, including video poker machines in at least eight states in the Southeastern United States: North Carolina, South Carolina, Kentucky, Georgia, Alabama and Florida, Texas and West Virginia. The majority of this affidavit, and the underlying investigation, relates to Henderson Amusement, Inc.'s operation of video gaming machines in North Carolina.

A violation of Title 18, United States Code, Section 1955 requires a violation of a State law in which it (illegal gambling business) is conducted and involves five or more people who conduct, finance, manage, supervise, direct or own all or part of a business that has been or

remains in substantially continuous operation in excess of thirty days or has a gross revenue of $2,000.00 in any single day.

North Carolina law had limits to gaming devices, such as the machines owned and/or operated by Henderson Amusement, Inc. North Carolina General Statute § 14-306. Slot machine or device defined reads in part:

(a) Any machine, apparatus or device is a slot machine or device within the provisions of G.S. 14-296 through 14-309, if it is one that is adapted, or may be readily converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated in such manner that the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, or which may be exchanged for any money, credit, allowance or any thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device; or any other machine or device designed and manufactured primarily for use in connection with gambling and which machine or device is classified by the United States as requiring a federal gaming device tax stamp under applicable provisions of the Internal Revenue Code. This definition is intended to embrace all slot machines and similar devices except slot machines in which is kept any article to be purchased by depositing any coin or thing of value, and for which may be had any article of merchandise which makes the same return or returns of equal value each and every time it is operated, or any machine wherein may be seen any pictures or heard any music by depositing therein any coin or thing of value, or any slot weighing machine or any machine for making stencils by the use of contrivances operated by depositing in the machine any coin or thing of value, or any lock operated by slot wherein money or thing of value is to be deposited, where such slot machines make the same return or returns of equal value each and every time the same is operated and does not at any time it is operated offer the user or operator any additional money, credit, allowance, or thing of value, or check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for money, credit, allowance or thing of value or which may be given in trade or by which the user may secure additional chances or rights to use such machine, apparatus, or device, or in the playing of which the operator does not have a chance to make varying scores or tallies.

(b) The definition contained in subsection (a) of this section and G.S. 14-296, 14-301, 14-302, and 14-305 does not include coin operated machines, video games, pinball machines, and other computer, electronic or mechanical devices that are operated and played for amusement, that involve the use of skill or dexterity to solve problems or tasks or to make varying scores or tallies and that:

(1) Do not emit, issue, display, print out, or otherwise record any receipt, paper, coupon, token, or other form of record which is capable of being redeemed, exchanged, or repurchased for cash, cash equivalent, or prizes, or award free replays; or

(2) In actual operation, limit to eight the number of accumulated credits or replays that may be played at one time and which may award free replays or paper coupons that may be exchanged

for prizes or merchandise with a value not exceeding ten dollars ($10.00), but may not be

exchanged or converted to money.

(c) Any video machine, the operation of which is made lawful by subsection (b)(2) of this section, shall have affixed to it in view of the player a sticker informing that person that it is a criminal offense with the potential of imprisonment to pay more than that which is allowed by law. In addition, if the machine has an attract chip which allows programming, the static display shall contain the same message.

(d) The exception in subsection (b)(2) of this section does not apply to any machine that pays off in cash. The exemption in subsection (b)(2) of this section does not apply where the prizes, merchandise, credits, or replays are (i) repurchased for cash or rewarded by cash, (ii) exchanged for merchandise of a value of more than ten dollars ($10.00), or (iii) where there is a cash payout of any kind, by the person operating or managing the machine or the premises, or any agent or employee of that person. It is also a criminal offense, punishable under G.S. 14-309, for the person making the unlawful payout to the player of the machine to violate this section, in addition to any other person whose conduct may be unlawful. (1937, c. 196, s. 3; 1967, c. 1219; 1977, c. 837; 1985, c. 644; 1989, c. 406, s. 1; 1993, c. 366, s. 1; 2000 151, s. 4.)

In North Carolina, Henderson Amusement, Inc. operated video gaming machines, a.k.a. video poker machines at multiple locations. According to the fourth quarter of 2005 NC Form TR-100, Video Gaming Report that Henderson Amusement, Inc. provided to the Asheville grand jury in response to subpoena, Henderson Amusement, Inc. had 350 machines in operation at 122 locations in North Carolina with gross receipts of $3,570,777 and $2,273,381 of prizes awarded. Henderson Amusement, Inc. owned the machines and typically placed them in businesses that were owned by others (Merchants).

This investigation revealed that Henderson Amusement, Inc. operated, at least in part, in the following manner: The daily operation of the video gaming machines, including cash pay-outs, was handled by the merchant or the manager of the store in which the machines were placed. A store for purposes of this affidavit includes places of business that have legitimate operations; such as convenience stores, restaurants, bars and golf courses as well as locations that had no purpose other than gambling with video gaming machines. The latter "stores" often kept some small items in the location that were ostensibly merchandise available for sale or could have been awarded as prizes, but these were kept only to provide a pretense of legal operation in case of law enforcement inquiry. B & R Stone in Burke County was one such store that consisted of a small block building containing video gaming machines, a pool table and some small ceramic pottery.

Henderson Amusement, Inc. had employees who sought new locations for the operation of Henderson Amusement, Inc. video gaming machines. These employees approached store owners and explained the financial benefits of operating video gaming machines. These employees included: Jerry Pennington, former Buncombe County Sheriff's Office Captain Guy Penland and check-up employees such as Randy Giles and Marty Babb. A Henderson Amusement, Inc. employee, such as Jerry Pennington, negotiated a profit sharing agreement (the split) with the store owner and if necessary explained to the owner how he should operate the machines, including instructions to pay-out cash only to known customers.

On a regular basis, typically weekly, a Henderson Amusement, Inc. employee would check-up the video gaming machines. This check-up typically consisted of checking the video display, opening the machine and checking the "hard" counters (analog counters that look like an automobile odometer) and printing out a ticket that summarized the financial activity on the video gaming machine since the last check-up. Among other items the print-out ticket listed readings for cash in, cash out, and net hold (the difference or profit). The Henderson Amusement, Inc. employee filled out a small NCR paper ticket using the numbers from the counters and print-out tickets. This form summarized the activity on the machines in the location and provided a total in minus total out which equaled total profit and was then divided into the merchant's share (store owner) and the operator's share (Henderson Amusement, Inc.). The Henderson Amusement, Inc. employee usually gave or showed a copy of the check-up ticket to the merchant or a store employee and collected the Henderson Amusement, Inc. share of the profit from the machines.

The check-up ticket and corresponding collected cash was then taken by the check-up employee to the Henderson Amusement, Inc. offices at 134 Banks Road, Kings Mountain, NC or to 11064 Asheville Highway, Inman, SC. There were times when the video gaming machines at a store operated at a loss; when the cash paid out exceeded the cash in. The following Henderson Amusement, Inc. employees performed check-ups in North Carolina according to witness testimony: Barry Henderson, William "Hack" Brown, Kathy Stephen, Marty Babb, Mike Elliott, Randy Giles and Roger Bedenbaugh.

The video gaming machines used in North Carolina by Henderson Amusement, Inc. were typically Pot-O'-Gold machines. These machines contained various computerized games and were operated with a touch-screen or buttons. The basic components for the machine were a cabinet, a monitor, a bill collector and a "mother board" which contained the computer processor. When a player had won on the machine or was finished playing and still had credits they would press a button to "cash out" and the video gaming machine would print a cash-out ticket. The player presented this ticket to the store owner or a store employee and exchanged it for cash.

According to witnesses, the merchant or an employee responsible for making illegal pay-outs to customers had access to a sum of cash that was used specifically to pay for cash-out tickets. This sum of cash was called the "bank" in video gaming machine gambling jargon. Many of the store owners also had an agreement with Henderson Amusement, Inc. that Henderson Amusement, Inc. would deliver additional cash to cover large "jackpot" pay-outs that exceeded the amount the store owner kept on-hand. If Henderson Amusement, Inc. delivered additional cash to a location the store owner was responsible for repaying their portion of the payout to Henderson Amusement, Inc.; this was typically done during the normal check-up, and was sometimes done in installments.

The following Henderson Amusement, Inc. employees testified falsely before the Asheville grand jury in denying their knowledge and actions in furtherance of the gambling and mail fraud conspiracy: William "Hack" Brown, Kathy Stephen, Marty Babb and Randall Giles. All of these employees acted as check-up people who collected cash from store owners and all of them denied knowledge of cash payouts. For every one of these witnesses at least one store owner or

clerk testified before the grand jury about these employees knowledge of the illegal payouts including instances where they delivered cash for gambling payouts to store owners or explained who a store owner should pay out and how to avoid paying an undercover law enforcement officer.

This paragraph will briefly describe the actions and responsibilities of Barron Sloan Henderson to establish probable cause that he conducted, managed, supervised, directed or owned all or part of an illegal gambling business which are also overt acts in furtherance of the conspiracy to violate the prohibition of an illegal gambling business. Barron Sloan Henderson was an owner of Henderson Amusement, Inc. According to an employee's testimony James or Barron Henderson ordinarily brought the money from video gaming machines to this employee who counted the money, prepared deposit tickets and paid many of the bills. At least two witnesses have stated that Barron Henderson performed check ups at their locations and knew that they were paying out cash on the machines.

Inran Alam, owner and operator of several convenience stores in Asheville, North Carolina, within the Western District of North Carolina, stated that he was approached by several Henderson Amusement employees to switch his video poker machines from D. T. to Henderson Amusement. After installing their video poker machines, he was approached by Barry Henderson. Alam told Barry Henderson that he had problems with making payouts. Barry Henderson told Alam that Barry Henderson and his brother James Henderson had arrangement with law enforcement and that it was alright to make cash payouts. Barry Henderson told Alam not to make any payouts in front of the video camera or in front of anybody. Henderson told Alam to destroy the tickets or to keep them in the clerk's pocket because if the tickets were in the cash register, law enforcement could take the money in the register.

Alam admitted that he was making payouts in his stores in Asheville, North Carolina. Alam stated that he initially had a 50/50 split with Henderson Amusement. the split later became 60/40 split in his favor.

After a while, Alam requested that the video poker machines be replaced in his stores because they were the old style. Barry Henderson had the video poker machines replaced pursuant to the request. Henderson told Alam that they had 500 video poker machines in a warehouse in Shelby, North Carolina, a violation of North Carolina law. On May 17, 2005, a search of the Henderson Amusement warehouse at 134 Banks Road, King's Mountain, NC revealed a manufacturing facility which was being used to manufacture and produce video poker machines, which is a violation of North Carolina law. There were over 250 cases for video poker machines in the facility, along with other gross lots of components being used to illegally make and manufacture video poker machines.

Barron Henderson also wrote checks in amounts greater than $10,000 drawn on a Henderson Amusement, Inc. Bank account into which the proceeds of the illegal gambling business had been deposited.

Based upon the information contained in this affidavit relating to violations of Title 18,

U.S.C., Sections 371, 1955, and 1957 your affiant believes that there is probable cause to believe Barron Sloan Henderson committed violations of these statutes. Your affiants requests that a Complaint and Arrest Warrant be issued for Barron Sloan Henderson.

*Charles P. Daly*
Charles P. Daly, Affiant
Special Agent
Federal Bureau of Investigation

*Eric S. Veater*
Eric S. Veater, Co-Affiant
Special Agent
Internal Revenue Service

Subscribed and sworn to before me this ____ th day of July 2007.

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge